Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| CENTRO DE PERIODISMO INVESTIGATIVO, INC.<br><br>Recurrido<br><br>v.<br><br>COMPAÑÍA DE TURISMO DE PUERTO RICO<br><br>Peticionaria | KLCE202401390 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2023CV10892<br><br>Sobre: Ley de Transparencia y Procedimiento Expedito para Acceso a la Información Pública (Ley Núm. 141-2019) |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio, el juez Marrero Guerrero y la jueza Boria Vizcarrondo.

Sánchez Ramos, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de febrero de 2025.

El Tribunal de Primera Instancia (TPI) le ordenó a la Compañía de Turismo de Puerto Rico ("Turismo") que pagara una multa impuesta a dicha parte, nueve meses antes, según la cual Turismo debía pagar $300 por cada día de incumplimiento con lo ordenado en una sentencia anterior (entrega de cierta información). Según se explica a continuación, no existe razón para intervenir con lo actuado por el TPI.

I.

El 15 de mayo de 2023, un representante del Centro de Periodismo Investigativo, Inc. (el "CPI" o "Centro"), le envió un correo electrónico a Turismo, mediante el cual solicitó la siguiente

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLAN202400016).

información relacionada con cada una de las propiedades en Puerto Rico registradas para operar como alquiler a corto plazo (las "Propiedades"): dirección física, nombre comercial y nombre del propietario del inmueble.

Al no recibir la información solicitada, el 21 de noviembre de 2023, el CPI presentó ante el TPI la acción de referencia (*Recurso Especial de Acceso a la Información Pública*, o el "Recurso"), ello al amparo del procedimiento expedito que provee la Ley 141-2019. El Centro alegó que Turismo se había rehusado a proveer un listado de todas las propiedades disponibles para alquiler a corto plazo (*short term rentals*), junto con las direcciones físicas correspondientes, sus nombres comerciales y los nombres de los propietarios. Aclaró que no solicitaban las declaraciones que someten los hosteleros en conexión con el canon por ocupación de habitación.

El 19 de diciembre, el TPI notificó una *Resolución* (la "Sentencia"), mediante la cual ordenó a Turismo entregar la información solicitada por el CPI. El TPI concluyó que la información requerida por el CPI es pública y que Turismo "no descargó su responsabilidad probatoria para demostrar la aplicabilidad en este caso de alguna de las excepciones reconocidas en el derecho constitucional de acceso a información pública, como lo sería un reclamo de confidencialidad y/o un interés apremiante sobre esta".

El 21 de diciembre, el CPI interpuso una *Solicitud de Orden de Desacato y Cumplimiento de Resolución Final*. El 22 de diciembre, el TPI notificó una *Orden Enmendada* en la cual señaló una **vista de desacato para el 9 de enero** de 2024. Mientras tanto, el 8 de enero, Turismo apeló la Sentencia y, mediante una Sentencia de 26 de enero de 2024, este Tribunal confirmó la misma (véase KLAN202400016). Además, **el 8 de enero**, este Tribunal denegó

una moción en auxilio de jurisdicción mediante la cual Turismo había solicitado la paralización de los trámites ante el TPI.

De la Minuta de la vista del 9 de enero de 2024 (la "Vista") surge que Turismo arguyó que, para cumplir con la Sentencia, tendría que examinar "declaración a declaración extrayendo la información que solicita [el Centro], hacer una tabla y proveer la información". Turismo consignó que ello implicaba "ir expediente por expediente físicamente". Turismo adujo que podría realizar ese trabajo en 30 días. El TPI determinó que procedía la imposición de una "multa indefinida de $300 a partir de los 30 días de no acreditarse fehacientemente el cumplimiento" con la Sentencia (la "Multa").

El 9 de febrero de 2024, Turismo informó al TPI que había cumplido con la Sentencia.

El 19 de febrero de 2024, el Centro le informó al TPI que, en realidad, Turismo no había cumplido todavía con la Sentencia, pues la información entregada estaba incompleta. El 29 de febrero, Turismo replicó.

El 13 de marzo, el Centro le informó al TPI que las partes se habían reunido y que Turismo se había comprometido a enviarle, antes del 26 de marzo, "una serie de datos, respuestas y/o documentos relacionados a las entregas producidas en el caso".

El 23 de abril, el Centro informó al TPI que Turismo no había cumplido todavía con la Sentencia. Consignó que, aunque había recibido cierta información adicional el 5 de abril, todavía Turismo no había entregado "la totalidad de la información" contemplada en la Sentencia.

El 3 de mayo, Turismo replicó; en esencia, sostuvo que, en realidad, dicha agencia "no mantiene un registro de propietarios", es decir, que "no existe una lista o registro de dueños de arrendamientos a corto plazo".

El 15 de mayo, el Centro informó al TPI que Turismo aún no había cumplido con la Sentencia. Señaló que, aun si no existiera un "registro de dueños", ello no necesariamente implica que Turismo no custodie "estos nombres en sus expedientes". Sostuvo que, durante una reunión entre las partes, surgió que Turismo "sí custodia información de dichos dueños".

El 27 de junio, el Centro informó al TPI que, el 18 de junio, las partes se habían reunido. Señaló que, en la reunión, Turismo informó que la información suplida anteriormente al Centro era "errónea". El Centro también aseveró que, el 25 y 27 de junio, tuvo la oportunidad de "revisar una muestra de expedientes físicos" en Turismo y, de tal manera, pudo constatar que, en varias instancias, dichos expedientes contenían información que Turismo debió suplir bajo los términos de la Sentencia, pero la cual no estaba comprendida en ninguna de las entregas que hasta ese momento Turismo había realizado.

Con el fin de dilucidar si Turismo había cumplido con la Sentencia, el TPI celebró una vista evidenciaria el 2 de julio (la "Vista Evidenciaria"). Luego de recibir prueba oral, y según la correspondiente minuta firmada por el juez (la "Orden"), el TPI determinó que Turismo "aún no ha cumplido en su totalidad" con la Sentencia y que, "por tanto, **la orden de desacato civil sigue vigente** debido al incumplimiento continuo" de Turismo (énfasis suplido). Surge de la Orden que **la "multa** indefinida de $300 diarios que entró en vigor el 10 de febrero de 2024 [] impuesta en la vista de desacato anterior **se sigue acumulando**, aun cuando esta no ha sido ejecutada ni cobrada" por el Centro (énfasis suplido). El TPI "aclaró que cualquier solicitud de ejecución de la multa indefinida impuesta se mantendrá en suspenso hasta que se determine si ... Turismo ha cumplido o no con la orden una vez venza" el nuevo término concedido.

A través de la Orden, el TPI dispuso que Turismo debía "revisar cada uno de los expedientes físicos y verificar si la información requerida está disponible. Si no lo está, deben informar y certificarlo en cada caso. De ese modo, [Turismo] podrá cumplir definitivamente" con la Sentencia. El TPI concedió a Turismo hasta el 30 de agosto para cumplir con la Sentencia.

El 1 de septiembre, el Centro informó al TPI que, vencido el término concedido (hasta el 30 de agosto), Turismo no se había comunicado con el Centro ni había entregado "la información que durante la vista del 2 de julio reconoció que custodiaba y aún no había producido". Solicitó al TPI la ejecución y cobro de la Multa, la cual consignó ascendía, a dicha fecha, a $61,500.00.

El 4 de septiembre, Turismo le informó al TPI que le había remitido cierta información al Centro.

El 19 de septiembre, mediante escrito al TPI (la "Moción"), el Centro planteó que, aun luego de la comunicación de Turismo del 4 de septiembre, Turismo no había cumplido con la Sentencia ni con lo dispuesto en la Orden. Ello pues la última entrega "está incompleta" y contiene "aseveraciones falsas". Resaltó que, "para 6,275 hosteleros de cerca de un total de 7,000", Turismo no suplió el nombre del dueño, y que tampoco se suplió la "totalidad de las direcciones físicas de las propiedades registradas para operar como alquileres a corto plazo", según ordenado en la Sentencia.

Además, aseveró que, durante la inspección física de los récords de Turismo (los días 25 y 27 de junio), el Centro pudo acceder a "decenas de direcciones físicas … y un sinnúmero de los nombres de sus dueños", nada de lo cual había sido entregado por Turismo. Por tanto, sostuvo que "**aún existen datos en los expedientes físicos** que custodia [Turismo], los cuales fueron ordenados a producir por este Tribunal, y **que nunca han sido entregados**" (énfasis suplido).

No obstante lo anterior, el Centro informó que había determinado desistir de obtener la información aún no provista por la vía judicial, ello para "ponerle fin [al] litigio". Ahora bien, ante el incumplimiento de Turismo con la Sentencia, solicitó la "ejecución y cobro" de la Multa, con "fecha de cierre" de 4 de septiembre. Consignó que, a dicha fecha, la Multa, por un total de 208 días en desacato (desde el 10 de febrero), ascendía a un total de $62,400.00.

El 16 de octubre, Turismo se opuso a la Moción. Insistió que había hecho una "revisión física de los expedientes" y que no tenía la obligación de mantener un "registro de propiedades y/o dueños". Se anejó una "certificación" al respecto (la "Certificación de Turismo"). Sostuvo que sus acciones "no denotan dejadez ni intención de desatender las órdenes del tribunal".

El 21 de octubre, el Centro replicó. Arguyó que el incumplimiento de Turismo, así como la determinación de desacato y la imposición de la Multa, no estaban en controversia. Planteó que lo "único que resta por hacer es ejecutar la multa ya adjudicada".

El 24 de octubre, Turismo duplicó; aseveró que la "información que consta en el Registro de Hosteleros divulgado corresponde a los expedientes físicos". Insistió en que "ha sido cooperadora y cumplidora de las órdenes" del TPI, y que ha actuado de buena fe.

Mediante una Orden notificada el 26 de noviembre (el "Dictamen"), el TPI declaró con lugar la Moción y, así, le ordenó a Turismo que pagase la Multa, en conexión con el tiempo entre el 10 de febrero y el 4 de septiembre, es decir, $62,400.00 ($300 por día). El TPI razonó que no podía dejar sin efecto la Multa, pues le correspondía a Turismo "acudir ante el Tribunal de Apelaciones procurando la revisión de dicha determinación" y "no lo hizo".

Inconforme, el 12 de diciembre, Turismo solicitó la reconsideración del Dictamen, lo cual fue denegado por el TPI mediante una Resolución notificada el 13 de diciembre.

El 26 de diciembre, Turismo presentó el recurso que nos ocupa. Aseveró que el "registro de hosteleros" que mantiene había sido provisto al Centro "de forma íntegra en más de una ocasión". Arguyó que había actuado "de forma diligente" y de "buena fe".

El Centro presentó un alegato en oposición. Resaltó que Turismo no recurrió oportunamente de la imposición de la Multa, ni tampoco de la Orden. Arguyó que, al emitirse el Dictamen, la Multa era "final y firme", y solo restaba su ejecución y cobro. Añadió que, en cualquier caso, no había controversia sobre el hecho de que Turismo no había cumplido con la Sentencia. Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari*. Al respecto, dispone, en lo pertinente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este

apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. [...]

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40, establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III.

Como cuestión de umbral, y contrario a lo que plantea Turismo, del récord surge claramente que (i) el TPI determinó que procedía imponer la Multa, con efectividad al 10 de febrero de 2024, por el incumplimiento de Turismo con la Sentencia, y (ii) dicha Multa nunca fue dejada sin efecto. Ello surge claramente de la Orden, arriba reseñada.

Tampoco hay controversia sobre el hecho de que Turismo no cumplió con la Sentencia. Es decir, en momento alguno Turismo ha entregado lo ordenado en la Sentencia: una lista de todas las Propiedades, con su dirección física, nombre del dueño y nombre comercial.

Si Turismo entendía que era de algún modo "imposible" cumplir con la Sentencia, ello debió ser planteado, o bien antes de emitida la Sentencia, o en apelación de la misma. No lo hizo. Al contrario, del récord surge que Turismo, al menos antes de que se presentara la Moción, siempre le representó al TPI que la información solicitada podía constar en sus expedientes físicos, aunque no estuviese plasmada en el denominado "Registro de Hosteleros" (el "Registro")[2].

Más aún, el Centro informó que lo anterior fue corroborado en su inspección de una muestra de los expedientes físicos los días 25 y 27 de junio de 2024. Turismo no ha rebatido estas aseveraciones. De hecho, en múltiples ocasiones Turismo solicitó tiempo al TPI para, precisamente, revisar todos los expedientes físicos y así extraer la información objeto de la Sentencia. No obstante, Turismo nunca suplió al Centro información adicional a la contenida en el Registro, la cual no satisface lo requerido en la Sentencia.

Por tanto, concluimos que el Dictamen está plenamente justificado a la luz del récord, y que el TPI no cometió error de derecho alguno al emitirlo.

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

---

[2] La Certificación de Turismo se limitó a consignar que el contenido del Registro era certero, de conformidad con el contenido de los expedientes físicos. Sin embargo, su lenguaje no excluye la posibilidad, anteriormente admitida por Turismo, de que los expedientes físicos contengan información objeto de la Sentencia, adicional a la que contiene el Registro. En cualquier caso, no hay controversia sobre el hecho de que el contenido del Registro no satisface lo ordenado a través de la Sentencia.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones